UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


CORNELIUS LORENZO WILLIAMS,                    CIV. NO. 12-2954 (SRN/JSM)

        Plaintiff,                       REPORT AND RECOMMENDATION

vs.

OFFICER WALSKI,

        Defendant.

        The above matter is before the Court on defendant's Motion for Summary

Judgment [Docket No. 84] and plaintiff's Motion for Sanctions [Docket No. 102].[1]   This

matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local

Rule 72.1.  This matter was decided on the parties' written submissions pursuant to the

Pretrial Scheduling Order issued on March 7, 2014.  [Docket No. 14].

## I.    BACKGROUND

        In early 2012, defendant Ryan Walski, an officer with the Winona, Minnesota

Police Department, obtained information from an investigator with the Winona Police

Department that plaintiff Cornelius Lorenzo Williams was driving without a valid

Minnesota driver's license.  Affidavit of Ryan Walski in Support of Motion for Summary

Judgment ("Walski Aff."), ¶3 [Docket No. 89].  The investigator provided Officer Walski

---

[1]     Plaintiff's motion for sanctions is not dispositive and could have been decided
through an Order.  However, in his sanctions motion, plaintiff objected to certain
statements submitted in connection with defendant's motion for summary judgment.
Therefore, the Court chose to address both motions in this Report and
Recommendation.

with a Minnesota Department of Vehicle Services ("DVS") printout showing that Williams did not have a valid driver's license.  Id.; Affidavit of Michael P. Goodwin ("Goodwin Aff."), Ex. F (driver's license data showing Williams' license was suspended as of September 15, 2010 for unpaid fines).[2]  Officer Walski carried a clipboard in his squad car with photographs and other information on individuals he knew did not have valid driver's licenses.  Id., ¶4.  Officer Walski added Williams' information to his clipboard sometime before February 21, 2012.  Id.  Officer Walski knew where Williams lived, and also knew that Williams drove a purple Pontiac Grand Am.  Id.

On February 21, 2012, Officer Walski was on patrol in the City of Winona when he saw Williams driving the Pontiac.  Id., ¶6.  Walski activated his squad lights and pulled up behind Williams.  Id.  Walski's squad camera and microphone was also activated during the stop.  Id., ¶7; Walski Aff., Ex. 2 (squad car audio and video recording) ("Squad Video").  Officer Walski left his squad car and approached Williams, who was getting out of his car.  Id., ¶9, Squad Video 17:02:13-17:02:25.  Officer Walski asked Williams if he had a driver's license and Williams said that he did not.  Walski Aff., ¶9.  Officer Walski also asked Williams for proof of insurance, as required by Minnesota law, and Williams stated that he was insured by Progressive Insurance.  Id., ¶10.  Officer Walski returned to his squad car and called Progressive Insurance.  Id.,

---

[2]     At his deposition, Williams refused to admit or deny that he was driving without a license on February 21, 2012, and invoked the Fifth Amendment.  See Goodwin Aff., Ex. A (Williams Dep.), pp. 29, 42, 81, 88.  Williams has not contended, however, that he was driving with a valid license, nor has he disputed the accuracy of the license record Officer Walksi submitted in connection with his motion for summary judgment.  As a result, the evidence is uncontroverted that Williams was driving without a valid driver's license on that day.  See also Faegre & Benson, LLP v. Purdy, 447 F. Supp.2d 1008, 1018 (D. Minn. 2006) (the court may draw a negative inference when a Fifth Amendment privilege is invoked by party in a civil action).

¶11.  The Progressive Insurance representative told Officer Walski that Williams' policy was cancelled in 2011.  Id., Squad Video 17:09:23-17:09:30.  Officer Walski cited Williams for driving without a license, driving without insurance, and giving false information to a police officer.  Id., ¶12; Ex. 3 (citation).  Officer Walski's notes on the citation stated:

> Saw subject driving on road and knew he did not have a valid [driver's license].  He stopped and I pulled up behind.  Knows no [driver's license].  Said he had insurance [with] Progressive.  I called Progressive & they said his policy was cancelled last year.  Cited and released.  Found marijuana pipe [and] digital scale during inventory.  Wrote [illegible] citation and mailed it to him.

Id., Ex. 3.

Because Williams' car was uninsured and on a public street, Officer Walski impounded the vehicle pursuant to Winona Police Department policy.  Id., ¶13.  Officer Walski and another officer performed an inventory search of the vehicle pursuant to the Winona Police Department's Inventory Search Policy.  Id.; Squad Video 17:16:01-17:19:30.  Before searching the vehicle, Officer Walski told Williams that he could remove all property from the vehicle except for the keys.  Goodwin Aff., Ex. A (Williams' Dep.), pp. 67-68;[3] Walski Aff., ¶14.

---

[3]      Williams testified as follows:

> Q.      So the officer did advise you that you need to leave the keys, but anything else you can take out with you, correct?
> A.      Correct.  Did I understand what he said? I probably didn't understand that.
> Q.      But he did tell you that, and you acknowledged- -
> A.      I acknowledge that now, yes, that he said that, but then, no I couldn't have because I would have took everything out of my car plus my sound system.

While inventorying the contents of the vehicle Officer Walski found a digital scale and blue pipe.[4]  Walski Aff., ¶16.  Walski observed residue on the pipe and scale that he recognized as marijuana residue.  Id.  Officer Walski and the tow truck operator believed that the vehicle smelled "like weed" (i.e. marijuana).  Id., ¶17; Squad Video at 17:31:37-17:31:42.  Officer Walski seized the pipe and scale and issued Williams a citation for possession of drug paraphernalia.  Walski Aff., Ex. 5 (citation).

The City of Winona Attorney's office dismissed all of the misdemeanor citations against Williams.[5]  Affidavit of Michael E. Flaherty ("Flaherty Aff."), ¶2 [Docket No. 90].

---

> Q.   You don't dispute that the officer said that at the time?
> A.   No.
> Q.   And you don't dispute that you said, "All right," in response to the officer telling you that you could remove anything you want out of the vehicle, correct?
> A.   Correct.

Goodwin Aff., Ex. A (Williams Dep.), pp. 67-68.

[4]   Williams described this pipe as a "decorative knick knack" at his deposition. Goodwin Aff., Ex. A (Williams Dep.), pp. 23-24.  Williams did not agree that the item was a pipe or that it could be used to smoke marijuana, but he did state that it could be used as a "peace pipe" and it could be used to "smoke anything."  Id., p. 24.  Williams stated that he purchased the item at a tobacco store.  Id., p. 25.  There is no genuine dispute that this item was a pipe.

[5]   Assistant City Attorney Flaherty stated that his office believed that it would have to obtain a writ of habeas corpus to transport Williams from prison back to Winona County for trial on the misdemeanor charges and decided to dismiss the misdemeanor charges to avoid the expense and burden on the court system.  Flaherty Aff., ¶4. Williams disputed Flaherty's description of the sequence of events that led the City Attorney's office to dismiss the misdemeanor charges.  Plaintiff's Memorandum of Law in Support of Motion for Minn. Stat. §549.211 Sanctions ("Pl. Sanctions Mem."), p. 5 [Docket No. 104].  The reasons underlying the City Attorney's decision to dismiss the charges are not material to Officer Walksi's summary judgment motion.

Williams sued Officer Walski[6] pursuant to 42 U.S.C. §1983.   Complaint [Docket No. 1].  The Complaint generally recited the events surrounding Walski's stop of Williams, and indicated that Officer Walski had no reason to believe Williams had done anything wrong.   Williams alleged that he was "racial[ly] profiled by a city police official for being a black driver driving a motor vehicle in the city limits of Winona, State of Minnesota."  Id., ¶1.   Williams also alleged that his vehicle was illegally searched and towed.  Id., ¶4.  After the encounter on February 21, 2012, Williams claimed that Walski "harassed and cited" him on several different occasions.   Id., ¶5.   The Complaint acknowledged that the citations issued against Williams were dismissed.  Id.  Williams sought $40,000 in damages—an amount he testified in his deposition was "arbitrary." Goodwin Aff., Ex. A (Williams Dep.), p. 35.

Officer Walski moved for summary judgment, arguing that Williams had not established the existence of an unconstitutional policy or practice that would make the City of Winona Police Department liable under §1983.   Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem."), pp. 8-12 [Docket No. 86]. Additionally, the stop and inventory search of Williams' vehicle was constitutional and supported by probable cause.[7]  Id., pp. 15-18.

---

[6]     Williams also sued Officer Tom Williams.   Complaint, ¶7.   At the time Williams commenced this suit against Officers Walski and Williams, he was incarcerated at Minnesota Correctional Facility, Faribault.   Consequently, his Complaint was subjected "to initial 'screening' pursuant to 28 U.S.C. § 1915A. Report and Recommendation dated December 12, 2012, p. 3 [Docket No. 3], adopted by Order dated December 20, 2012.  [Docket No. 8].  Because the Complaint did not allege any wrongdoing by Officer Williams, he was summarily dismissed as a defendant.  Report and Recommendation, p. 5, adopted by Order dated December 20, 2012.

[7]     Officer Walski also argued that if Williams' Complaint was read to be a suit against him in his individual capacity, then he was entitled to qualified immunity.  Def.

Williams responded that the information that he was driving without a valid driver's license was not obtained legally, therefore the stop, inventory search and seizure of the pipe and scale were "fruits of the poisonous tree."   Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 1 ("Pl. Mem.") [Docket No. 97].  Williams objected to the inventory search because it was not supported by a search warrant; the seizure of the pipe and scale violated the Fourth Amendment; and the inventory search did not comply with the police department's policy on inventory searches because Officer Walski never searched the trunk of the vehicle, as the policy required.  Id., pp. 2-11.  Williams further argued that the Winona Police Department's Inventory Search Policy was unconstitutional because it allowed officers to "search every vehicle impounded by their department without a search warrant which is a violation. . .of the. . .Fourth Amendment. . . ."  Id., p. 16.

## II.   DISCUSSION

### A.   <u>Summary Judgment Standard</u>

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  <u>Enterprise Bank v. Magna Bank</u>, 92 F.3d 743, 747 (8th Cir.1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment

---

Mem., pp. 20-25.  The Court need not address this argument because as discussed below, the Complaint <u>must</u> be construed as a suit against Officer Walski in his official capacity. <u>See</u> <u>Washington v. Anoka County Jail</u>, Civ. No. 10-4938(JRT/FLN), 2012 WL 1886482, at *3 (D. Minn. May 2, 2012) (citing <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir.1999)).

as a matter of law.  Id.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  "Summary judgment is. . .an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Williams is pro se.  Therefore, his Complaint must be read liberally.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) (pro se litigants are held to a lesser pleading standard than represented parties).  Upon a liberal reading of his pro se Complaint, Williams asserted a claim under Title 42 U.S.C. § 1983 for a violation of his Fourth Amendment right to be free from illegal search and seizure[8] and a claim for racial profiling, which is a violation of the

---

[8]   Williams did not actually reference the Fourth Amendment in his Complaint, although he does refer to an illegal search of the vehicle.  Complaint, ¶4.  On the Civil Cover Sheet Williams described the lawsuit as involving "racial profiling."  [Docket No. 1-1].  At his deposition, Williams testified as follows:  "Q. So your entire claim in this federal lawsuit is based on Officer Walski's inventory search of your vehicle and seizing or impounding the digital scale and knick knack item?  A.  Correct.  Q.  Okay.  And that's it?  A.  Yes.  Goodwin Affidavit, Ex. A, p. 17 (Williams Dep.) [Docket No. 88-1].  Williams moved for leave to file an Amended Complaint [Docket No. 15], which sought a declaratory judgment that his Fourth, Sixth and Fourteenth Amendment rights were violated.  Id., p. 5.  Magistrate Judge Arthur Boylan granted to the motion to the following extent:

> 2.    The motion to amend is **granted** to the extent that it seeks to modify fact allegations as presented in the Fact section, Paragraphs 1-2, and to re-assert a §1983 claim for a Fourth Amendment violation;

> 3.    The motion to amend is **denied** to the extent plaintiff . . . seeks to add a claim under the Sixth Amendment and due process and equal protection claims under the Fourth Amendment.

Equal Protection Clause.  Sow v. Fortville Police Dep't, 636 F.3d 293, 303 (7th Cir. 2011); see also, Ollie v. Johnson, Civ. No. 10-4806 (JNE/LIB), 2010 WL 5664952, at *2 (D. Minn. Dec. 8, 2010) (plaintiff's use of the words "racial profiling" in pro se complaint suggested he was bringing a Fourteenth Amendment Equal Protection claim).

### B.     Defendant's Actions Did Not Violate Williams' Constitutional Rights

When a party asserts a §1983 claim, he must allege facts showing that the named defendant allegedly violated his federal constitutional rights, while acting under color of state law.  See Hart v. City of Little Rock, 432 F.3d 801, 804 (8th Cir. 2006), cert. denied, 547 U.S. 1207 (2006) (to state an actionable Section 1983 civil rights claim, a plaintiff must show "'(1) [a] violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right[.]'") (quoting Kuha v. City of Minnetonka, 365 F.3d 590, 606 (8th Cir. 2003), overruled on other grounds, Szabla v. City of Brooklyn Park, 486 F.3d 385 (8th Cir. 2007), quoting, in turn, Shrum v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001)); see also, West v. Atkins, 487 U.S. 42, 48 (1988) (to state a cause of action under Title 42 U.S.C. §1983, the plaintiff must allege facts showing that the named defendants violated his constitutional rights while acting under color of State law) (citations omitted).

---

Order on Motion to Amend, p. 2 [Docket No. 19].  Williams then filed an Amended Complaint that added the new constitutional claims that Magistrate Judge Boylan expressly prohibited.  [Docket No. 23].  Officer Walski moved to strike this pleading, and Magistrate Judge Boylan recommended that the motion be granted.  Report and Recommendation [Docket No. 27].  Williams objected to this Report and Recommendation.  Plaintiff's Objection to the R & R and Notice of Motion and Motion of Motion [sic].  [Docket No. 33].  The Honorable Susan Richard Nelson overruled Williams' objections and ordered that his Amended Complaint be stricken.  Memorandum Opinion and Order [Docket No. 62].  This Court has construed Williams' racial profiling claim to go hand-in-hand with his constitutional objections to Officer Walski's stop and the inventory search, so the Court also addressed that claim as well.

In other words, a §1983 complaint must specifically describe what each defendant allegedly did, or failed to do, and how each defendant's acts or omissions allegedly violated the complainant's constitutional rights.  See Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999).

Williams did not state if he was suing Officer Walski in his official or individual capacity.  "The Eighth Circuit Court of Appeals has repeatedly held that if a plaintiff in a §1983 case does not expressly state that a defendant is being sued in his individual capacity, then the plaintiff's claims are deemed to be brought against the defendant only in his official capacity.  As explained by the Court of Appeals, 'in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings.'"  Washington, 2012 WL 1886482, at *3 (citing Johnson 172 F.3d at 535 (8th Cir. 1999)).  As a result, the Court concludes that Williams sued Officer Walski only in his official capacity.  Id.; see also Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007) ("[w]e have repeatedly stated the general rule: 'If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims'") (citations omitted); Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir.1999) ("[I]f a complaint is silent, or only hints at the capacity in which a state officer is sued for monetary damages, the complaint should be interpreted as an official-capacity claim. . .[i]n actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability[.]") (citing Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir.1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989)); see also Artis v. Francis Howell North Band Booster Ass'n., Inc., 161 F.3d 1178, 1182 (8th

Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity.") (citing Murphy v. Arkansas, 127 F.3d 750, 754-55 (8th Cir. 1997) (stating that the requirement that personal capacity claims be clearly pled is "strictly enforce[d].").

A §1983 claim against a government employee in his or her official capacity is deemed to be a claim against that person's governmental employer.  Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("[o]fficial capacity suits. . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (quoting Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690, n. 55 (1978)); Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) ("'[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent'") (quoting Elder–Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)). Therefore, Williams' §1983 claims against Walski must be treated as a claim against his employer, the City of Winona Police Department.

To sustain an official capacity claim against a municipal employee such as Officer Walski, a §1983 claimant "must prove that the 'municipality itself caused the constitutional violation at issue.'"  Elder–Keep, 460 F.3d at 986 (quoting Kuha, 365 F.3d at 604 (8th Cir. 2003)).  A municipality can be liable under §1983, but only if the claimant proves that the municipality has adopted some policy, custom or practice that caused a violation of the claimant's federal constitutional rights.  See Grayson v. Ross, 454 F.3d 802, 810–11 (8th Cir. 2006) ("[o]fficial-capacity liability under 42 U.S.C. §1983 occurs only when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy ") (quotation omitted); <u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994) ("municipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees") (quoting <u>Monell</u>, 436 U.S. at 690); <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir.1992) ("[a] municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) ("[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law'") (citations omitted); <u>City of Canton v. Harris</u>, 489 U.S. 378, 386–87 (1989) ("[O]ur first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

The elements of proof in an "official capacity" suit are as follows:

> To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right. If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation. Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with 'deliberate indifference' to an individual's federal rights.

<u>Veatch v. Bartels Lutheran Home</u>, 627 F.3d 1254, 1257 (8th Cir. 2010). An "official policy" is "a deliberate choice to follow a course of action made from among various

alternatives by an official who is determined by state law to have the final authority to establish government policy." Elder-Keep, 460 F.3d at 986-1987.

### 1.   Williams Failed to Establish the Existence of an Unconstitutional Custom or Policy

Williams' Complaint does not identify a Winona Police Department policy that he believes is unconstitutional.  Nor could Williams identify such a policy in his deposition or answers written discovery.  Goodwin Aff., Ex. A (Williams Dep.), pp. 38-39[9]; Ex. B, pp. 2-3 (Williams' answers to interrogatories) ("The plaintiff has no knowledge of any document or policy that the plaintiff would understand that would lead the defendant(s) to believe he had authority to act in violation of the Fourth Amendment.")  Nonetheless, Williams' response to the motion the motion for summary judgment indicated that he believed that the Inventory Search Policy was unconstitutional.  Pl. Mem., p. 11.  This Court finds otherwise.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. Const. amend. IV; see also Illinois v. Gates, 462 U.S. 213, 230, 235 (1983).  A warrantless search violates the Fourth Amendment unless an exception to the warrant requirement applies.  Katz v. United States, 389 U.S. 347, 357 (1967).   Within the framework of the Fourth Amendment, the Supreme Court "has consistently sustained police intrusions into

---

[9]   Williams testified as follows:

Q.   Your response to [Interrogatory No. 8] was, "The plaintiff has no knowledge of any document or policy that the Plaintiff would understand that would lead the Defendants to believe that he had authority to act in violation of the Fourth Amendment."  Is that correct?  A. Correct.  Q.  Anything else you want to add to that?  A. No.  Goodwin Aff., Ex. A (Williams Dep.), pp. 38-39.

automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." South Dakota v. Opperman, 428 U.S. 364, 373 (1976); Colorado v. Bertine, 479 U.S. 367, 371 (1987) (stating "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment"); United States v. Rowland. 341 F.3d 774, 779 (8th Cir. 2003) ("Law enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment."), cert. denied, 540 U.S. 1093 (2003).

When a vehicle is lawfully impounded, an inventory search is conducted for "the protection of the owner's property while it remains in police custody. . . the protection of the police against claims or disputes over lost or stolen property,. . . and the protection of the police from potential danger." Opperman, 428 U.S. at 369 (internal citations omitted). An inventory search does not need to be supported by probable cause, nor do the officers need a warrant to conduct an inventory search, because law-enforcement officials "are not investigating a crime; instead they are 'performing an administrative or caretaking function.'" Rowland, 341 F.3d at 779 (quoting United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993)). "The only limit to such searches is that they be reasonable under the circumstances." Id. (citing Opperman, 428 U.S. at 369).

The Eighth Circuit Court of Appeals has explained the propriety of an inventory search as follows:

> [t]he search of a vehicle to inventory its contents must [ ] be reasonable under the totality of the circumstances, and may not be a ruse for a general rummaging in order to discover incriminating evidence. The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the

> inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime.

United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011) (internal quotes and citations omitted).   "An inventory search is reasonable and constitutional if it is conducted according to standardized police procedures."  United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011).   However, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search."  Taylor, 636 F.3d at 464.  "In other words, '[s]omething else must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle.'"  United States v. Barraza-Maldonado, 879 F. Supp.2d 1022, 1033 (D. Minn. 2012) (quoting Taylor, 636 F.3d at 465).   The "central inquiry" is whether the inventory search is reasonable under all of the facts and circumstances of the particular case.  Marshall, 986 F.2d at 1174.

The City of Winona has a "standard and well-established procedure . . .for a vehicle that is not insured per State law to be impounded."  Walski Aff., ¶13.  There is no dispute that Williams was driving the vehicle when Officer Walski stopped him, and the vehicle was uninsured, a violation of Minn. Stat. §169.797.  Goodwin Aff., Ex. A, pp. 40-41; 60; Ex. E (insurance records).

The City of Winona Police Department's Inventory Search Policy provides as follows:

      1.0    Purpose

It is the purpose of this General Order to establish policy and set forth procedures regarding the inventory search of impounded automobiles.

2.0    Policy

It is the general policy of this department that an inventory search will be conducted on all automobiles impounded by the Winona City Police Department.

3.0    Procedure

3.1    Whenever a police officer of this department impounds an automobile, an inventory search of the automobile shall be conducted, including the areas of the passenger compartment, the glove compartment and the trunk.
3.2    Any closed containers in the vehicle shall be opened and the contents inside of the closed containers shall be inventoried.
3.3    Any inventory search of a vehicle impounded by the Winona Police Department shall be conducted specifically to secure and protect the vehicle of its contents within the custody of the Winona Police Department.
3.4    The officers conducting the inventory search shall complete the Vehicle Impoundment and Inventory Record, a copy of which is attached to this General Order.

Walski Aff., Ex. 4 (City of Winona Policy 104-05, effective date July 27, 2004).

In connection with the inventory search, Officer Walski completed the Inventory Record, as required.  Goodwin Aff., Ex. H.  The pipe and digital scale are not listed on the inventory form, but they appear on Officer Walski's notes, written in connection with the citation for driving without a license, lack of insurance, and giving false information to a police officer.  Walski Aff., Ex. 3.

There is no evidence to support a claim that the inventory search of Williams' vehicle was conducted pursuant to an unconstitutional custom or policy.  "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled ... as to [have] the force of law.'"  Harris v. City of Pagedale, 821 F.2d 499, 504 n. 7 (8th Cir.1987) (quoting Monell, 436 U.S. at 691).  "To establish a constitutional violation resulting from such a custom, a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized."  Russell, 420 F.3d at 849 (citing Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir.1996) (en banc)).

The only evidence before this Court is that this was a routine inventory search of a vehicle that was impounded because Williams lacked a valid driver's license to drive it and the vehicle was uninsured.  Further, the inventory search was generally conducted in accordance with the Winona Police Department's Inventory Search Policy.  See United States v. Davis, 882 F.2d 1334, 1339 (8th Cir. 1989) ("To pass constitutional muster, the search must be conducted pursuant to standard police procedures.")  Even if Officer Walski did not conduct the search in strict compliance with the City's policy,[10] a single instance of failing to comply with an otherwise constitutional inventory search policy does not establish causation for a claim of municipal liability under §1983. Russell v. Hennepin County, 420 F.3d 841, 848 (8th Cir. 2005).

---

[10]   The Policy requires officers to search the trunk of the impounded vehicle.  The squad video does not show that Walski and his partner searched the trunk of Williams' car.  Williams noted this failure.  Pl. Mem., pp. 9-10.

Moreover, there is no evidence to indicate that Officer Walski's stop of Williams and search of Williams' vehicle was a pretext for an investigatory search. As set out below, Officer Walski had probable cause to stop Williams based on the DVS printout showing that Williams did not have a valid driver's license, and that is why he stopped him. Walski Aff., ¶¶3-6.

In summary, Williams presented no evidence that the inventory search deviated materially from the City's policy or that it was the consequence of an unconstitutional "custom" or "practice."[11] Where, as here, no unconstitutional policy, custom or practice was implicated in the Complaint or by the evidence before this Court, Williams' §1983 claim fails.

### 2.    There Was Probable Cause to Stop Williams' Vehicle

To the extent that Williams was alleging that Officer Walski's stop was not supported by probable cause, the record does not support such a claim.

> A traffic stop constitutes a seizure for Fourth Amendment purposes. To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, a reasonable, articulable suspicion that criminal activity is occurring. A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement.

---

[11]    Williams' efforts to connect the inventory search with unrelated disciplinary actions taken by the Police Department against Officer Walski are unavailing. Pl. Mem., p. 8. Williams stated that Walski "has a disciplinary history of neglect of duty and not following department policies" and cited "Exhibit 6" in support of that statement. Id. "Exhibit 6," which consists of documents from Officer Walski's disciplinary file, was submitted in connection with Williams' motion for the appointment of counsel. See Docket No. 96-6. None of the incidents detailed in this exhibit involved an inventory search of an impounded vehicle and had no relevance to the issues raised in the motion for summary judgment.

United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (quotations and citations omitted); United States v. $231,930 in United States Currency, 614 F.3d 837, 842 (8th Cir. 2010) (any traffic violation, however minor provides probable cause for a traffic stop.) (citing United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004)). "Even if [the officer was] mistaken about the existence of a violation, 'the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances.'" United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005) (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir.2005)).

Officer Walski had credible evidence—a Minnesota DVS printout—that Williams was driving without a valid driver's license, a violation of Minn. Stat. §171.02. Williams alleged that Officer Walski did not obtain the DVS printout "legally." Pl. Mem., p. 9. But Williams did not elaborate on this claim, which is not contained in the Complaint, and there is no evidence that Officer Walski did anything "illegal" to obtain the information. See United States v. Irons, 537 Fed. Appx. 221, 223 (4th Cir. 2013) (a stop did not violate the Fourth Amendment when an officer's investigation before the stop showed that defendant did not have a valid driver's license and defendant was stopped while driving); United States v. Pierre, 484 F.3d 75, 84 (1st Cir. 2007) (stop did not violate the Fourth Amendment where officer learned from other officers in his unit that defendant did not have a valid driver's license and defendant was stopped while driving); Burton v. United States, 237 F.3d 490, 496 (5th Cir. 2000) (stop supported by probable cause when officers had information that the driver was driving without a valid driver's license); but see Delaware v. Prouse, 440 U.S. 648, 663 (1979) ("[e]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is

18

unlicensed. . .stopping an automobile an detaining the driver in order to check his driver's license. . . [is] unreasonable under the Fourth Amendment.").

Based on the evidence before, this Court, the Court finds that Officer Walski had probable cause to stop Williams.

### 3.    The Seizure of Williams' Property Was Constitutional

To the extent Williams' Complaint can be construed to allege an illegal seizure of his property—the pipe and digital scale—the record does not support that claim. Officer Walski found the items during the inventory search, and he reasonably believed that the pipe and digital scale were drug paraphernalia as that term is defined by Minnesota law and based on his twelve years of experience as a police officer.[12]  Walski Aff., ¶¶1, 15, 16.  While there is no evidence to suggest that the inventory search was investigatory in nature, nevertheless "'police may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose was not to investigate a crime.'"  United States v. Petty, 367 F.3d 1009, 1013 (8th Cir. 2004) (quoting United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993)). The pipe is encompassed within the definition of "drug paraphernalia" under Minn. Stat. §152.092 and a digital scale is recognized as an item frequently used in connection with

---

[12]     Minn. Stat. §152.092 defines "drug paraphernalia" as:

> All equipment, products, and materials of any kind, except those items used in conjunction with permitted uses of controlled substances under this chapter or the Uniform Controlled Substances Act, which are knowingly or intentionally used primarily in (1) manufacturing a controlled substance; (2) injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, (3) testing the strength, effectiveness, or purity of a controlled substance, or (4) enhancing the effect of a controlled substance.

drug use.   See State v. Hanson, 800 N.W.2d 618, 623 (Minn. 2011) (drug conviction supported in part by evidence of a digital scale found on defendant's person).

Williams claimed that the scale and pipe were newly purchased and may have had cigarette tobacco "crumbs" on them, which Officer Walski mistook for marijuana. Pl. Resp., p. 4.  But the validity of the inventory search and seizure of the pipe and scale depends on the reasonableness of Officer Walski's belief that the items constituted drug paraphernalia.   Texas v. Brown, 460 U.S. 730, 742 (1983).   A person may have an innocent use for a household item such as a digital scale, but in the context of Officer Walski's observation that the scale had drug residue on it, his belief that the scale constituted "drug paraphernalia" was not unreasonable, even if it was based on a mistaken belief that the cigarette tobacco crumbs were marijuana residue.   Indeed, Williams' statements that the scale and pipe had "tobacco crumbs" on them and that the cigarettes he was smoking "can sometimes smell like marijuana to smokers and/or nonsmokers," (Pl. Mem., p. 2), bolster Officer Walski's statement that he believed that the scale and pipe had marijuana residue and his comment to the tow truck operator that Williams' car "smelled like weed."   Walski Aff., ¶17; Squad Video at 17:31:37-17:31:42.  In other words, even if Officer Walski was mistaken in his belief that the pipe and scale were "drug paraphernalia," Williams himself admitted that there was a rational basis for that belief.

### 4. There Was No Evidence that the Stop was Based on Racial Profiling

Racial profiling is a violation of the Equal Protection Clause.   Sow, 636 F.3d at 303.  Traffic laws may not be selectively enforced based on race.   Whren v. United States, 517 U.S. 806, 813 (1996).   "[T]o establish discriminatory racial profiling, a

plaintiff must show that similarly situated individuals of a different race were not stopped." United States v. Abdow, Civ. No. 09-292 (JMR/SRN), 2010 WL 1839316, at *7 (D. Minn. Feb. 22, 2010); see also Livingston ex. rel. Livingston v. Borough of McKees Rocks, 223 Fed. Appx. 84, 88 (3rd Cir. 2007) ("to make out a profiling claim, [plaintiffs] must establish that the actions of the officers (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.") (citation omitted.). "To survive a motion for summary judgment on a claim of racial profiling, a plaintiff must provide evidence that a law enforcement officer was "motivated by a discriminatory purpose." Sow, 636 F.3d at 303. (citations omitted); see also Ward v. City of Minneapolis, Civ. No. 11-1752 (JRT/LIB), 2013 WL 3871429, at *6 (D. Minn. July 26, 2013) (summary judgment appropriate on racial profiling claim when plaintiff failed to produce any evidence that would "allow a reasonable inference that the officers agreed to target him for the purposes he suggests.").

There is nothing in the record to indicate that Officer Walski did not stop non-African American drivers who were driving without a valid driver's licensed. Officer Walski's statement that Williams' race played no part in the stop, and that the stop was made because he had observed a criminal violation, (Walski Aff., ¶7), was credible and not contradicted by any other evidence in the record. Therefore, Williams' racial profiling claim fails.

### C. Williams' Motion for Sanctions

Williams moved for sanctions pursuant to Minn. Stat. §549.211, subd. 2—the state statute that is similar to Rule 11. According to Williams, the Officer Walski and Flaherty affidavits must be stricken as a sanction because they contain "false

testimony."  Pl.'s Sanctions Mem., p. 1.   Williams disputed the veracity of Flaherty's statement that the misdemeanor charges against him were dismissed because of the difficulty of transporting Williams from prison, where he was incarcerated on the charge of being a felon in possession of a weapon, back to state court for trial on the misdemeanor charges.  Id., p. 4.  Williams stated this was not true, and that he had been transported to state court for trial on the misdemeanor charges and was in a holding cell when the charges were dismissed.  Id., p. 5.  Williams also challenged the statement in Officer Walski's affidavit that Officer Walski "found a digital scale and blue marijuana pipe in the passenger compartment of the vehicle."  Id. (quoting Walski Aff., ¶16).  According to Williams, an unidentified female officer located the digital scale and "decorative knick knack," not Officer Walski.  Id.

As relief, Williams asked the Court to strike the two affidavits and order monetary sanctions.  Id., p. 6.

Officer Walski responded that sanctions under Minn. Stat. §549.211 were inappropriate as the state statute has no bearing on sanctions in federal court. Defendant's Memorandum in Opposition to Motion for Sanctions ("Def. Sanctions Resp."), p. 1 [Docket No. 107].  In addition, a motion to strike affidavits submitted in connection with a motion for summary judgment is not authorized.  Id. (citing Willcox v. Liberty Life Assur. Co. of Boston, Civ. No. 06-3038 (PAM/JSM), 2007 WL 1862221, at *1, n. 1 (D. Minn. June 26, 2007)).

Officer Walski also argued that whether he found the pipe and scale with the assistance of the other officer was irrelevant and did not change the fact that the items were found during an inventory search of Williams' vehicle.  Id.  As to Flaherty's

affidavit, it was undisputed that Williams' state incarceration on the felony charge was to begin on October 4, 2013, and his jury trial on the misdemeanor offenses was scheduled for October 8, 2012. Affidavit of Joseph Flynn in Opposition to Motion for Sanction ("Flynn Aff."), Ex. A (Register of Actions); Goodwin Aff., Ex. G, ECF page 83 [Docket No. 88-3]. Whether the county attorney correctly determined that a writ of habeas corpus would be required to transport Williams to the courthouse for trial on the misdemeanor charges was irrelevant to any claims in Williams' lawsuit. Def. Sanctions Resp., pp. 2-3.

Williams' motion for sanctions must be denied. First, the Court is without authority to grant sanctions under Minn. Stat. §549.211. See Thelen v. Citiy of Elba, Civ. No. 08-1150 (JNE/JJG), 2010 WL 3515591, at *2 (D. Minn. July 13, 2010) (concluding that a predecessor of Minn. Stat. §549.211 had no application in federal court and stating "[a] state statute cannot control the procedural authority of a federal court, and where there is a conflict between state law and federal procedure, the federal rules must receive precedence."); Norwood Operating Co. v. Beacon, Civ. No. 04-1390 (MJD/SRN), 2006 WL 3103154, at *3 (D. Minn. Oct. 31, 2004) ("Minn. Stat. § 549.211 is a state procedural statute governing the conduct of lawyers in Minnesota state courts and is inapplicable to the present action. Minnesota statutes providing for sanctions where litigants acted in bad faith or asserted unfounded claims do not apply in federal court.") (citation omitted).

Second, even assuming that Williams intended to move for sanctions under Fed. R. Civ. P. 11, there was no evidence that Williams followed the procedures set forth in Rule 11, which require providing Officer Walski with an opportunity to cure any allegedly

false assertions made in connection with this matter within the 21-day "safe harbor" provision. Failing to follow the procedure described in the Rule is fatal to Williams' motion. See Kelly v. Aman Collection Servs., Civ. No. 03-6091 (DWF/JSM), 2007 WL 38913, at *2, 3 (D. Minn. 2007).

Lastly, courts in this District have consistently denied motions to strike "memoranda, affidavits, or anything else that is not a pleading for the purposes of Rule 12(f)" Vogel v. Turner, Civ. No. 11-0446 (PJS/JJG), 2013 WL 358874, at *9 (D. Minn. Jan. 8, 2013) (citing Carlson Mktg. Grp., Inc. v. Royal Indem. Co., Civ. No. 04-3368 (PJS), 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006)) ("[T]here is no such thing as a 'motion to strike'-at least when the paper being targeted is a memorandum or affidavit submitted in connection with a motion for summary judgment. No such motion is authorized by the Federal Rules of Civil Procedure, and no such motion is authorized by the local rules of this District. Civil Rule 12(f) comes closest, authorizing parties to move a court to strike certain material from a pleading. But neither a memorandum nor an affidavit is a 'pleading.'") (citations omitted).

For all of these reasons, Williams' motion for sanctions should be denied.

## III.   RECOMMENDATION

For all of the foregoing reasons, this Court recommends that:

1.      Defendant's Motion for Summary Judgment [Docket No. 84] be **GRANTED** and this matter be dismissed with prejudice.

2.      Plaintiff's Motion for Sanctions [Docket No. 102] be **DENIED.**

Dated: April 11, 2014                    *Janie S. Mayeron*
                                         JANIE S. MAYERON
                                         United States Magistrate Judge


## NOTICE


Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 25 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.