# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Cornelius Lorenzo Williams, | Case No. 12-cv-2954 (SRN/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Officer Walski, | |
| Defendant. | |

Cornelius Lorenzo Williams, pro se.

Joseph E. Flynn, Jardine Logan & O'Brien P.L.L.P., 8519 Eagle Point Blvd., Suite 100, Lake Elmo, Minnesota 55042, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on Plaintiff Cornelius Williams' Objections [Doc. No. 112] to United States Magistrate Judge Janie S. Mayeron's April 11, 2014 Report and Recommendation [Doc. No. 111] ("R & R").  The Magistrate Judge recommended that Defendant Officer Walski's Motion for Summary Judgment [Doc. No. 84] be granted, that Plaintiff's Motion for Sanctions [Doc. No. 102] be denied, and that Plaintiff's claims be dismissed with prejudice.  For the reasons set forth below, the Court overrules Plaintiff's Objections and adopts the R & R.

## II.   BACKGROUND

The factual and procedural background of this case is well documented in the Magistrate Judge's R & R, and is incorporated herein by reference.[1]  Briefly stated, Plaintiff's claims stem from a traffic stop that occurred in the afternoon of February 21, 2012, in the city of Winona, Minnesota.  (See Compl. [Doc. No. 1] ¶ 1.)  Defendant, Winona police officer Ryan Walski, had earlier been told by an investigator with the Winona Police Department that Plaintiff was driving without a valid Minnesota driver's license.  (Walski Aff. [Doc. No. 89] ¶ 3.)  The information provided by the investigator included a print-out from the Department of Vehicle Services ("DVS") showing that Plaintiff did not have a valid license, as well as a photograph of Plaintiff.  (Id. ¶¶ 3–4.)  Prior to February 12, 2012, Defendant had added those documents to a clipboard he carried with him in his patrol car, which contained information on other individuals who he knew did not have a valid driver's license.  (Id. ¶ 4.)

While on patrol on February 21, 2012, at approximately 4:03 p.m., Defendant observed Plaintiff driving his vehicle.  (Id. ¶ 5 & Ex. 3.)  Because Defendant knew that Plaintiff did not have a valid driver's license, he activated his squad lights and pulled up behind Plaintiff's vehicle as it pulled to a stop on the street.  (Id. ¶ 6.)  Defendant approached the vehicle and asked Plaintiff if he had a driver's license.  (Id. ¶ 9.)  Plaintiff responded that he did not.  (Id.)  Defendant then asked Plaintiff to provide proof of insurance, and Plaintiff stated that he was insured by Progressive Insurance.  (Id. ¶ 10.)

---

[1]     The Court recites background facts only to the extent necessary to rule on Plaintiff's objections.

Defendant returned to his squad car and called Progressive Insurance, and he was informed that Plaintiff's insurance policy had been canceled in 2011.  (Id. ¶ 11 & Ex. 2 (Squad Video 17:07:50–17:09:30); see Goodwin Aff. [Doc. No. 88], Ex. E (Insurance Policy Records).)  At that time, Defendant cited Plaintiff for driving without a license,[2] driving without insurance,[3] and giving false information to a police officer.  (Walski Aff. ¶ 12 & Ex. 3.)

Because Plaintiff's car was uninsured and parked on a public street, Defendant impounded the vehicle pursuant to "standard and well-established procedure in Winona." (Id. ¶ 13.)  Pursuant to Winona Police Department policy, an inventory search must be conducted on all automobiles impounded by the Winona City Police Department.  (Id., Ex. 4.)  Under the policy, "the passenger compartment, the glove compartment and the trunk" are to be searched.  (Id., Ex. 4, ¶ 3.1.)  Defendant and another Winona police officer conducted the inventory search of Plaintiff's vehicle and discovered in the passenger compartment a digital scale and a "blue marijuana pipe" containing apparent burnt marijuana residue.  (Id. ¶¶ 13, 16.)  Based on his training and experience, Defendant recognized the pipe as a type used for smoking marijuana and the scale as a type used to weigh narcotics.  (Id. ¶ 16.)  He also noticed the smell of marijuana.  (Id. ¶ 17.)  Defendant

---

[2]     See Minn. Stat. § 171.02, subd. 1 (2012) (stating that "a person shall not drive a motor vehicle upon a street or highway in this state unless the person has a valid license"); id. § 171.241 ("It is a misdemeanor for any person to willfully violate any of the provisions of [Chapter 171] . . . .").
[3]     See Minn. Stat. § 169.791, subd. 2 ("Every driver shall have in possession at all times when operating a vehicle and shall produce on demand of a peace officer proof of insurance in force at the time of the demand covering the vehicle being operated.  If the driver does not produce the required proof of insurance upon the demand of a peace officer, the driver is guilty of a misdemeanor. . . .").

seized both items and issued Plaintiff a citation for possession of illegal drug paraphernalia.[4]

(Id. ¶ 18 & Ex. 5.)  Later that evening, insurance was obtained for Plaintiff's vehicle.  (See

Pl.'s Objs., Ex. 1 (showing an insurance policy for Plaintiff's vehicle that was effective at

5:49 p.m. on February 21, 2012).)

The City of Winona Attorney's Office ultimately dismissed the citations.

(Flaherty Aff. [Doc. No. 90] ¶ 2.)  Assistant City Attorney Michael Flaherty stated that

his office believed it would be necessary to obtain a writ of habeas corpus in order to

transport Plaintiff from prison (where he was to be incarcerated on an unrelated charge)

to Winona County for trial.  (Id. ¶¶ 3–4.)  Given the "significant expense" and

"unnecessary burden on the court system" associated with that course of action, the

Attorney's Office decided to dismiss the charges.  (Id. ¶ 4.)

On November 26, 2012, Plaintiff filed a lawsuit against Defendant[5] pursuant to 42

U.S.C. § 1983.  In his Complaint, Plaintiff alleges that Defendant had no legitimate reason

---

[4]      Minnesota Statutes § 152.01 defines "drug paraphernalia" as:

> . . . all equipment, products, and materials of any kind, except those items
> used in conjunction with permitted uses of controlled substances . . ., which
> are knowingly or intentionally used primarily in (1) manufacturing a
> controlled substance, (2) injecting, ingesting, inhaling, or otherwise
> introducing into the human body a controlled substance, (3) testing the
> strength, effectiveness, or purity of a controlled substance, or (4) enhancing
> the effect of a controlled substance.

Minn. Stat. § 152.01, subd. 18; see id. § 152.092 ("It is unlawful for any person
knowingly or intentionally to use or to possess drug paraphernalia. Any violation of this
section is a petty misdemeanor.").

[5]      Plaintiff also named Officer Tom Williams as a defendant, but Mr. Williams was
dismissed from the action on December 20, 2012 [Doc. No. 8].  Plaintiff has attempted to
amend his Complaint to add other defendants to this action, as well.  (See Doc. Nos. 15-

4

for stopping him, and that Plaintiff was the victim of "racial profil[ing]."  (Compl. ¶ 1.)

Plaintiff further alleges that his vehicle was "illegally searched and towed."  (Id. ¶ 4.)  He

also claims to have been harassed by Defendant from February 21, 2012 to May 1, 2012.

(Id. ¶ 5.)  Plaintiff seeks $40,000 in damages.  (Id. at 6.)

      Defendant moved for summary judgment, arguing that Plaintiff has failed to

establish the existence of an unconstitutional policy or practice by the City of Winona

sufficient to support liability under 42 U.S.C. § 1983.  (See Def.'s Mem. in Supp. of Summ.

J. [Doc. No. 86], at 8–12.)  Defendant further asserted that Plaintiff's constitutional rights

were not violated because the traffic stop, subsequent inventory search of Plaintiff's vehicle,

and seizure of Plaintiff's drug paraphernalia were constitutional.  (See id. at 12–20.)

Finally, Defendant argued that, even if the claims are construed to be against Defendant in

his individual capacity, rather than in his official capacity, they fail because Defendant is

protected under the doctrine of qualified immunity.  (See id. at 20–25.)  In support of his

motion, Defendant submitted his own affidavit and exhibits [Doc. No. 89], as well as an

affidavit of his counsel that attached numerous exhibits [Doc. No. 88], and an affidavit from

the Assistant City Attorney for the City of Winona [Doc. No. 90].

      In opposition, Plaintiff argued that Defendant obtained information about Plaintiff

illegally and that Defendant's seizure of Plaintiff's property was unconstitutional because

Defendant did not have a search warrant and it was not proven that there was marijuana

residue on the property.  (See Pl.'s Mem. in Opp. [Doc. No. 97] ("Pl.'s Opp."), at 1–3.)  He

1, 23.)  However, his Amended Complaint was stricken from the record, and the original
Complaint remains the operative pleading in this case.  (See Order dated Aug. 21, 2013
[Doc. No. 62], at 7.)

also argued that Defendant violated the police department's inventory policy because he failed to take inventory of the trunk of the car, and that the policy itself is unconstitutional. (See id. at 3–4, 8.)  Finally, Plaintiff argued that statements contained in Defendant's affidavit and in the affidavit of the Assistant County Attorney are inaccurate.  (See id. at 12.)  Specifically, Plaintiff argued that Defendant's statement that he—rather than the officer who assisted him with the inventory search—found the pipe and scale, was false. (Id. at 5.)  Defendant submitted a reply [Doc. No. 100].

Plaintiff subsequently moved for sanctions under Minnesota Statutes § 549.211, requesting that the Court strike the affidavits of Defendant and the Assistant City Attorney and award Plaintiff costs and attorneys' fees in the amount of $1,000.  (See Notice of Mot., Mot. for Minn. Stat. 549.211 Sanctions [Doc. No. 102].)  Plaintiff's motion is based on the allegedly inaccurate statements contained in those affidavits, which he argued were prejudicial to his case.  (See Pl.'s Mem. in Supp. of Minn. Stat. 549.211 Sanction [Doc. No. 104], at 1.)  In response, Defendant argued that Minnesota Statutes § 549.211 does not apply in federal court, motions to strike affidavits are not authorized under the Federal Rules of Civil Procedure, and the purported inaccuracy is irrelevant.  (Def.'s Mem. in Resp. to Pl.'s Mot. for Minn. Stat. § 549.211 Sanctions [Doc. No. 107], at 1–2.)

The Magistrate Judge issued her R & R on both motions on April 11, 2014.[6]  She interpreted Plaintiff's Complaint as asserting claims under § 1983 for a violation of his Fourth Amendment right to be free from illegal searches and seizures and a violation of the Equal Protection Clause.  (Report and Recommendation dated Apr. 11, 2014 [Doc. No. 111]

---

[6]     The R & R was signed on April 11, 2014, and filed on April 14.

("R & R"), at 7–8 & n.8.)  Because Plaintiff did not state in his Complaint whether he was suing Defendant in his official or individual capacity, the Magistrate Judge determined that Defendant was sued only in his official capacity.  (Id. at 9.)

As for Defendant's summary judgment motion, the Magistrate Judge concluded that Plaintiff's claims fail.  First, she found that Plaintiff failed to establish the existence of an unconstitutional custom or policy by the City of Winona, the inventory search was generally conducted in accordance with the City's policy, and there is no evidence to indicate that the stop and search of the vehicle were pretext for an investigatory search.  (See id. at 12–17.) Second, the Magistrate Judge concluded that the DVS print-out showing that Plaintiff did not have a valid driver's license provided Defendant with probable cause to stop Plaintiff's vehicle, and that there was no evidence that the print-out was obtained illegally.  (See id. at 17–19.)  Third, the Magistrate Judge determined that Defendant's seizure of Plaintiff's property during the inventory search was constitutional because Defendant reasonably believed that it constituted drug paraphernalia.  (See id. at 19–20.)  Finally, the Magistrate Judge found that Plaintiff's racial profiling claim fails because "[t]here is nothing in the record to indicate that Officer Walski did not stop non-African American[7] drivers who were driving without a valid driver's license[]."  (Id. at 21.)  As for Plaintiff's sanctions motion, the Magistrate Judge concluded that:  (1) the Court is without authority to grant sanctions under Minnesota Statutes § 549.211, (see id. at 23); (2) even if Plaintiff had intended to bring his motion pursuant to the federal equivalent of that statutory provision (i.e., Rule 11

---

[7]      Plaintiff notes in his objections to the R & R that he is "Moorish American," not African American.  (Pl.'s Mem. in Opp. of R & R [Doc. No. 112], at 1.)

of the Federal Rules of Civil Procedure), sanctions are inappropriate because Plaintiff failed to comply with the necessary procedures, (see id. at 23–24); and (3) motions to strike affidavits are "consistently denied" in this District, (id. at 24).  Accordingly, the Magistrate Judge recommended that this Court grant Defendant's motion and deny Plaintiff's motion. (Id.)

## III.   DISCUSSION

The district court reviews de novo those portions of the R & R to which an objection is made, and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b).  Plaintiff filed his Objections to the R & R on April 28, 2014, declaring that he "objects to the Report and Recommendation entirely."  (Pl.'s Mem. in Opp. of R & R [Doc. No. 112] ("Pl.'s Objs."), at 1.)  The Local Rules of the District of Minnesota require that all objections to a report and recommendation be "specific."  D. Minn. LR 72.2(b)(1). However, because Plaintiff is pro se, the Court will read his objections liberally.  See, e.g., Stennes v. Summit Mortgage Corp., No. 12-913, 2012 WL 5378086, at *2 (D. Minn. Oct. 31, 2012) ("The Court gives Plaintiff's objections the most liberal construction possible in light of Plaintiff's pro se status.").  Under such a reading, it appears that Plaintiff makes the following objections to the R & R:  (1) the Magistrate Judge did not apply a more lenient standard to Plaintiff based on his pro se status; (2) Defendant was investigating Plaintiff at the time of the traffic stop, and the stated reason for stopping Plaintiff was pretext; (3) the personal property that was recovered from the car was not drug

paraphernalia; (4) the seizure of Plaintiff's property violated the Fourth Amendment because Defendant lacked probable cause; (5) there is no evidence that Defendant did not engage in racial profiling, and (6) Defendant's affidavit was untruthful.[8]   (See Pl.'s Objs. at 1–9.)

### A.   Objection to Application of Legal Standard

Plaintiff asserts that he has not been held to a lesser standard based on his pro se status and that the lesser standard cannot be identified in the proceedings.  (Id. at 2.)  While it is true that pro se litigants' submissions and arguments are to be viewed liberally and with leniency, pro se litigants are not excused from compliance with procedural and substantive rules.   See Quam v. Minnehaha Cnty. Jail, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam) ("Although [the plaintiff] is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to [the plaintiff's] lawsuit."); Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986) (stating that "[p]ro se litigants are not excused from compliance with substantive and procedural law").

In this case, the Magistrate Judge did acknowledge Plaintiff's pro se status and determine that "his Complaint must be read liberally."  (R & R at 7.)  As a result, she interpreted Plaintiff's Complaint to assert claims under the Fourth Amendment and the

---

[8]      In addition, Plaintiff states that, "[t]o find out if the plaintiff [sic] insurance was valid or not, Officer Walski . . . entrap[ed] the plaintiff[,] asking about his driver's license information with knowledge he already knew the answer to prior to stopping the plaintiff [sic] parked vehicle."  (Pl.'s Objs. at 4 (emphasis omitted).)  He also claims that, "[f]or every illegal lookup of the plaintiff [sic] driver['s] license which has been conducted is $2,500.00 for each lookup by law."  (Id. at 5.)  These statements appear to be references to new claims.  However, not only is it improper for Plaintiff to raise new claims in his objections, but he has stated no legal basis for these claims.  Accordingly, the Court will not address them further.

Equal Protection Clause, even though neither the Fourth Amendment nor the Equal

Protection Clause (or Fourteenth Amendment) were referenced in the Complaint.  (See id. at

7–8.)  In addition, although Plaintiff failed to identify in the Complaint or in his deposition

and discovery responses any Winona Police Department policy that he believes is

unconstitutional, the Magistrate Judge evaluated his Fourth Amendment claim based on his

reference to the inventory search policy in his opposition to the summary judgment motion.

(See id. at 12.)  Plaintiff, however, is not excused from satisfying the summary judgment

standard simply because he is pro se, and as discussed in more detail below, the Magistrate

Judge correctly determined that Plaintiff's claims, even based on the liberal reading of his

Complaint and other submissions, fail to withstand summary judgment.  Accordingly, this

Court finds that the Magistrate Judge properly evaluated Plaintiff's claims in light of his pro

se status, and Plaintiff's objection is overruled.

### B.      Objections Relating to Summary Judgment Motion

Summary judgment is proper if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249–50 (1986).  A dispute over a fact is "material" only if its resolution

might affect the outcome of the lawsuit under the substantive law.  Anderson, 477 U.S. at

248.  A dispute over a fact is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the non-moving party."  Id.

"The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence Cnty., 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp., 477 U.S. at 323). Although the record is to be viewed in the light most favorable to the nonmoving party, UniGroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219–20 (8th Cir. 1992), "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256. Thus, the movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of material fact exists in that instance because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Plaintiff makes several arguments relating to the Magistrate Judge's ruling on Defendant's summary judgment motion. He asserts that Defendant was investigating Plaintiff at the time of the traffic stop and the stated reason for stopping Plaintiff was pretext, the pipe and scale are not drug paraphernalia, the seizure of the pipe and scale violated the Fourth Amendment because Defendant lacked probable cause, and there is no evidence that Defendant stopped non-Moorish Americans or non-African Americans.

(See Pl.'s Objs. at 3–9.)  These arguments can be categorized into three main objections: (1) the traffic stop violated the Fourth Amendment, (2) the inventory search and seizure of Plaintiff's personal property violated the Fourth Amendment, and (3) Defendant engaged in racial profiling.  As the Magistrate Judge correctly determined, however, Plaintiff has failed to raise a genuine issue of material fact related to his claims.

### 1.    Traffic stop

Plaintiff's Fourth Amendment claim fails to the extent that it is based on the February 21, 2012 traffic stop.  The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV.  As the Eighth Circuit has recognized:

> [a] traffic stop constitutes a seizure for Fourth Amendment purposes.  To constitute a reasonable seizure, a traffic stop must be supported by, at a minimum, a reasonable, articulable suspicion that criminal activity is occurring.  A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement.  Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.

United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (internal citations and quotation marks omitted).

The undisputed evidence in this case demonstrates that, at the time Defendant stopped Plaintiff's vehicle, he possessed information indicating that Plaintiff was operating a vehicle without a valid driver's license, which is a misdemeanor under Minnesota law.  See Minn. Stat. § 171.02, subd. 1 (2012) (stating that "a person shall not drive a motor vehicle upon a street or highway in this state unless the person has a valid

license"); id. § 171.241 ("It is a misdemeanor for any person to willfully violate any of the provisions of [Chapter 171] . . . .").  Although Plaintiff states repeatedly in his objections his belief that—based on Defendant's possession of the DVS print-out and Plaintiff's personal information—Defendant must have been "investigating" him prior to the stop, Plaintiff does not articulate why Defendant's possession of, or reliance upon, that information was improper.  And, as the Magistrate Judge noted, the case law indicates that there was nothing improper about either.  See, e.g., United States v. Caldwell, 97 F.3d 1063, 1067 (8th Cir. 1996) (finding "probable cause to suspect that a traffic violation had occurred" where the officer "had a reasonable suspicion, based upon objective facts obtained from other law enforcement sources, that [the defendant] was probably driving with a suspended license").  Accordingly, because Defendant had probable cause to believe that criminal activity was occurring, the traffic stop was reasonable.  Plaintiff's assertion that Defendant's stated reason for the stop was merely a "smoke screen" does not change the outcome because, even if that assertion were true, an officer's subjective intent in making a traffic stop is irrelevant once he has probable cause.  Therefore, the traffic stop did not violate Plaintiff's Fourth Amendment rights.

### 2.    Inventory search and seizure of personal property

Likewise, Plaintiff's Fourth Amendment claim fails to the extent that it is based on the inventory search and seizure of the pipe and scale.  "Law enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment."  United States v. Rowland, 341 F.3d 774, 779 (8th Cir.

13

2003) (citation omitted).  An officer does not need a search warrant or probable cause to conduct an inventory search, but the search must be "reasonable under the circumstances." Id. (citation omitted).  Inventory searches meet this standard if they are "'conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion.'" Id. (quoting South Dakota v. Opperman, 428 U.S. 364, 369 (1976)).  However, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." United States v. Taylor, 636 F.3d 461, 465 (8th Cir. 2011) (citation omitted).  "'Something else' must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function." Id. (citation omitted).

In addition, "[o]fficers performing a lawful inventory search may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." United States v. Garreau, 658 F.3d 854, 858 (8th Cir. 2011) (citation and internal quotation marks omitted).  If, while conducting a valid inventory search, an officer finds items in plain view that he reasonably believes are evidence of a crime, he may seize those items. See Texas v. Brown, 460 U.S. 730, 742 (1983) (citation omitted); Thomas v. Hungerford, 23 F.3d 1450, 1453 (8th Cir. 1994) (citation omitted) (finding that "[the officer] properly seized the contents of the duffel bag as evidence of a crime because the items were in plain view during a valid [inventory] search").  Satisfaction of this standard "does not

14

demand any showing that such a belief be correct or more likely true than false.  A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."  <u>Brown</u>, 460 U.S. at 742 (citation omitted).

Plaintiff's objections to the Magistrate Judge's finding that the inventory search of Plaintiff's vehicle and the subsequent seizure of the pipe and scale were lawful are that: (1) Defendant lacked probable cause or a search warrant; and (2) there is no evidence demonstrating that the pipe and scale are drug paraphernalia, and the dismissal of the drug paraphernalia charge is dispositive.  (<u>See</u> Pl.'s Objs. at 5–9.)  These objections lack merit.  First, as discussed above, neither probable cause nor a search warrant is required to conduct an inventory search of a lawfully impounded vehicle, as long as the search is conducted pursuant to standardized police procedures.  The evidence in this case shows that the City of Winona has a well-established procedure of impounding uninsured vehicles that are on public streets, as well as a standardized police procedure for conducting an inventory search of impounded vehicles.  The evidence also demonstrates that Plaintiff's vehicle was uninsured and on a public street at the time of the stop, and that Defendant substantially complied with the standardized inventory-search procedure.  Although he may have neglected to search the trunk of the vehicle, there is no indication that Defendant's inventory search was pretext for an investigatory search.  And, as the case law makes clear, the fact that he found potentially incriminating items (the pipe and scale) during the search does not render the search unlawful.

Second, whether or not the pipe and scale actually were "drug paraphernalia" under Minnesota law does not affect the lawfulness of the seizure of those items. As discussed above, Defendant was conducting a lawful inventory search at the time he discovered the pipe and scale in plain view. Accordingly, his belief that the pipe and scale constituted drug paraphernalia needed only to be reasonable, not correct or more likely true than not. Defendant smelled marijuana and observed residue on the pipe and scale, which he believed—based on his training and experience—to be marijuana. Even if that residue actually was tobacco, Defendant's mistaken belief was reasonable, as evidenced by Plaintiff's own statements that the cigarettes he smokes can smell like marijuana, (Pl.'s Opp. at 2), and that "[n]o one can identify cigarette crumbs from marijuana crumbs," (Pl.'s Objs. at 5). In addition, the subsequent dismissal of the charge based on that evidence does not affect the reasonableness of Defendant's belief at the time he seized it. See Clay v. Conlee, 815 F.2d 1164, 1167–68 (8th Cir. 1987) (finding that the fact of a party's ultimate innocence "is neither dispositive of nor relevant to" the issue of whether an officer had probable cause to arrest him in the first place). Therefore, Defendant lawfully seized the pipe and scale.

### 3.    Racial profiling

Finally, Plaintiff's Equal Protection claim fails. Allegations that an officer made a traffic stop on account of an individual's race constitute a "cognizable equal protection claim." Johnson v. Crooks, 326 F.3d 995, 999 (8th Cir. 2003). However, "[w]hen the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the

plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." Id. at 1000 (citation omitted).  Accordingly, where a plaintiff offers no evidence that a police officer does not stop individuals of other races under similar circumstances, the plaintiff's claim is properly dismissed on summary judgment.  See id. (finding that the district court erred in not dismissing an equal protection claim where the African-American plaintiff "offered no evidence that [the sheriff] does not stop non-African Americans under similar circumstances").

The Magistrate Judge concluded that Plaintiff's racial profiling claim fails because the record contains no evidence that Defendant did not stop non-African American individuals who were driving without a valid license, and because Defendant's statement that race played no part in the stop was not contradicted.  (R & R at 21.)  Plaintiff appears to object to the Magistrate Judge's application of the summary judgment burden, arguing that "there's no evidence on record that shows the defendant stopped Europeans outside of Moorish Americans and African Americans who don't have valid driver's license[s]." (Pl.'s Objs. at 5.)  However, as discussed above, the burden is on Plaintiff to set forth facts demonstrating a genuine issue for trial regarding discriminatory effect and purpose. Because he has not done so, his claim fails.  Accordingly, Plaintiff's objections relating to the merits of his claims are overruled.

###### C.      Objection Relating to Defendant's Affidavit

Finally, Plaintiff maintains his contention that Defendant's affidavit is untruthful.

Specifically, Plaintiff asserts that:

> [t]he Court has allowed "Ryan Walski" to claim the actions of another.  If
> the defendant was allowed to take the stand to be sworn in to give a truthful
> testimony, he would've committed perjury.  Instead of stating my partner
> recovered property belonging to the plaintiff, he claim [sic] he did when he
> didn't and video evidence shows this proof.

(Pl.'s Objs. at 5.)

It is not clear to the Court whether Plaintiff's objection is directed toward the

validity of the Magistrate Judge's ruling on the summary judgment motion or the

sanctions motion, but this Court finds that the objection must be overruled in either

scenario.  First, there appears to be no dispute that another officer assisted Defendant in

taking inventory of the vehicle.  And, whether the pipe and scale were recovered by

Defendant alone or by Defendant with the assistance of that officer is irrelevant to the

resolution of Plaintiff's claims.  Second, as the Magistrate Judge correctly determined,

the Court is without authority to award sanctions under Minnesota Statutes § 549.211.

See Norwood Operating Co. v. Beacon Promotions, Inc., Civ. No. 04-1390 (MJD/SRN),

2006 WL 3103154, at *6 (D. Minn. Oct. 31, 2006) ("Minn. Stat. § 549.211 is a state

procedural statute governing the conduct of lawyers in Minnesota state courts and is

inapplicable to the present [federal] action.  Minnesota statutes providing for sanctions

where litigants acted in bad faith or asserted unfounded claims do not apply in federal

court.").  Even construing Plaintiff's sanctions motion liberally to consist of a request for

sanctions under Rule 11 of the Federal Rules of Civil Procedure, Plaintiff's motion fails

because he did not provide Defendant with the requisite 21-day safe harbor in which to

correct or withdraw any allegedly false statements.  See Fed. R. Civ. P. 11(c)(2); Gordon

v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003) (finding that the district

court abused its discretion in awarding Rule 11 sanctions where the moving party failed

to provide the nonmoving party with a 21-day safe harbor).  Moreover, motions to strike

affidavits are not recognized under the Federal Rules of Civil Procedure.  As noted by

another court in this District:

> there is no such thing as a "motion to strike"—at least when the paper being
> targeted is a memorandum or affidavit submitted in connection with a
> motion for summary judgment.  No such motion is authorized by the
> Federal Rules of Civil Procedure, and no such motion is authorized by the
> local rules of this District.  Civil Rule 12(f) comes closest, authorizing
> parties to move a court to strike certain material from a pleading.  But
> neither a memorandum nor an affidavit is a "pleading."

Carlson Mktg. Grp., Inc. v. Royal Indem. Co., Civ. No. 04-CV-3368, 2006 WL 2917173,

at *2 (D. Minn. Oct. 11, 2006).  Accordingly, Plaintiff's objection is overruled.

### THEREFORE, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Objections [Doc. No. 112] to the Magistrate Judge's April 11, 2014
   Report and Recommendation are **OVERRULED**;

2. The Magistrate Judge's April 11, 2014 Report and Recommendation [Doc. No.
   111] is **ADOPTED**;

3. Defendant's Motion for Summary Judgment [Doc. No. 84] is **GRANTED**;

4.  Plaintiff's Complaint [Doc. No. 1] is **DISMISSED with prejudice**; and

5.  Plaintiff's Motion for Sanctions [Doc. No. 102] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  September 16, 2014            s/Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge